**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STEADFAST INSURANCE COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>SHAMBAUGH & SON, L.P., and EMCOR GROUP, INC.,<br><br>　　　Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Steadfast Insurance Company ("Steadfast" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendants Shambaugh & Son L.P. ("Shambaugh") and EMCOR Group, Inc. ("EMCOR") (collectively, "Defendants") on the grounds and seeking the relief as set forth below:

## INTRODUCTION

1.　　In this action, Steadfast seeks a declaration that it does not owe insurance coverage under certain Contractor's Protective Professional Indemnity and Liability Insurance policies for costs Shambaugh and/or EMCOR incurred in responding to a subpoena issued to Shambaugh. The subpoena was issued in connection with a multi-district litigation in which neither Shambaugh nor EMCOR are, or ever have been, a party. Because the subpoena makes no allegations against, and seeks no monetary remedy from, either Shambaugh or EMCOR, the subpoena does not constitute a Claim subject to coverage under the relevant policies.

## PARTIES

2.　　Plaintiff Steadfast is an Illinois corporation engaged in the insurance business with a statutory home office located at 1299 Zurich Way, Schaumburg, Illinois 60196, and its principal

1

place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  Steadfast operates as a non-admitted surplus lines insurer in Connecticut.

3. Defendant Shambaugh is a Texas limited partnership with its principal place of business located at 7614 Opportunity Drive, Fort Wayne, Indiana 46825.  Upon information and belief, the partners of Shambaugh are CSUSA Holdings LLC and CS48 Acquisition Corp.  Upon information and belief, the sole member of CSUSA Holdings LLC is EMCOR-CSI Holding Co., which is a Delaware corporation with its principal place of business located in Norwalk, Connecticut.  Upon information and belief, CS48 Acquisition Corp. is a Delaware corporation with its principal place of business located in Norwalk, Connecticut.

4. Defendant EMCOR is a Delaware corporation with its principal place of business located at 301 Merritt Seven, Norwalk, Connecticut 06851.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The Court has general personal jurisdiction over EMCOR because EMCOR's principal place of business is located in Norwalk, Connecticut.

7. The Court has specific personal jurisdiction over Shambaugh pursuant to Conn. Gen. Stat. Ann. § 52-59b(a)(1) because Steadfast's claims arise from Shambaugh's transaction of business in Connecticut through its agent, EMCOR.  The policies at issue designate EMCOR as the "irrevocable agent for all Insureds".  The policies were issued to EMCOR at addresses in Connecticut and, upon information and belief, EMCOR issued payment of the policies' premiums from Connecticut and communicated with its broker from Connecticut in connection with negotiating the policies.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because the Court has personal jurisdiction over EMCOR and Shambaugh as well as because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## THE POLICIES

9. Steadfast issued to EMCOR a Contractor's Protective Professional Indemnity and Liability Insurance Policy, policy number EOC 9817132 02, with a policy period of July 31, 2018 to July 31, 2019 (the "2018-2019 Policy"). A true and correct copy of the 2018-2019 Policy is attached hereto as **Exhibit A**.

10. In addition, Steadfast issued to EMCOR a Contractor's Protective Professional Indemnity and Liability Insurance Policy, policy number EOC 9817132 03, with a policy period of July 31, 2019 to July 31, 2020 (the "2019-2020 Policy"). A true and correct copy of the 2019-2010 Policy is attached hereto as **Exhibit B**. The 2018-2019 Policy and the 2019-2020 Policy are collectively referred to herein as the "Policies".

11. EMCOR is designated as the First Named Insured in the Policies. The Policies each provide that EMCOR, as the First Named Insured, is "the appointed and irrevocable agent for all Insureds, including for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment of any premium, deductible or self-insured retention or the return of any premium under" the Polices.

12. Shambaugh maintains that it is a subsidiary of EMCOR. To the extent Shambaugh is a subsidiary of EMCOR, Shambaugh qualifies as a Named Insured under the Policies.

13. The Policies are claims-made-and-reported policies and, as relevant here, provide coverage for Contractor's Pollution Liability with limits of liability of $25,000,000 each Claim and $25,000,000 in the aggregate, subject to a self-insured retention of $500,000 each Claim.

14. The Policies' insuring agreement provides that the Steadfast "will pay on behalf of the Insured all sums in excess of the Self-Insured Retention that the Insured shall become legally obligated to pay as Loss because of Claims first made against the Insured and reported to the Company during the Policy Period."

15. With respect to the relevant coverage part—Contractor's Pollution Liability—the insuring agreement applies as follows:

> The Company will pay on behalf of the Insured all sums that the Insured shall become legally obligated to pay as Loss as a result of Claims for Bodily Injury, Property Damage or Clean-up Costs caused by Pollution Conditions resulting from Covered Operations by the Insured; or by any entity for which the Insured is legally liable as a result of the performance of others.  The Pollution Conditions must be unexpected and unintended from the standpoint of the Insured.  Claims for Bodily Injury, Property Damage or Clean-up Costs must be first made against the Insured and reported to the Company during the Policy Period.

16. The Policies define Claim as "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for Loss."

17. The Policies define Loss as, in relevant part:

> 1. monetary awards or settlements of compensatory Damages and where insurable by law, punitive, exemplary or multiplied Damages because of:
> . . .
> (b) Bodily Injury, Property Damages or Clean-up Costs under Coverage A.2; and
> 2. Claim Expenses; and
> 3. Emergency Response Costs.

18. The Policies define Damages as:

> any amount which an Insured is legally obligated to pay for any Claim to which this insurance applies and shall include judgments, settlements, and interest on judgments, provided always that Damages shall not include the return or withdrawal of professional fees, sanctions, uninsurable fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

19. The Policies define Claim Expenses as "1. Fees charged by any lawyer designated by the Company; and 2. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if authorized by the Company."

20. The Policies define Bodily Injury, Clean-Up Costs, and Property Damage as:

Bodily Injury means:
1. physical injury, sickness or disease sustained by any person, including death resulting therefrom and solely with respect to this item A.1, any accompanying medical monitoring; or
2. mental anguish or emotional distress.

. . .

Clean-Up Costs means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent, which shall not be unreasonably withheld or delayed, incurred in the investigation, removal, remediation including the associated monitoring, or disposal of soil, surface water, groundwater or other contamination:
1. To the extent required by Environmental laws, or specifically mandated by court order, the government or any political subdivision of the United States of America or any state or any municipality thereof, or Canada or any province thereof; or
2. Which have been actually incurred by the government or any political subdivision of the United States of America or any state thereof, or Canada or any province thereof, or by third parties.
Clean-Up Costs also includes Restoration Costs.

. . .

Property Damage means:
1. Physical injury to or destruction of tangible property of parties other than the Insured including the resulting loss of use and diminution in value thereof;
2. Loss of use, but not diminution in value, of tangible property of parties other than the Insured that has not been physically injured or destroyed; or
3. Natural Resource Damage or Biodiversity Damage. Property Damage does not include Environmental Damage.

21. The Policies define Covered Operations and Pollution Conditions as:

Covered Operations means those operations and activities performed by or on behalf of the Insured.

5

> . . .
> Pollution Conditions means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, low-level radioactive material, electromagnetic fields, medical waste including infectious and pathological waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the concentration or amounts discovered, unless such natural condition(s) are released or dispersed as a result of the performance of Covered Operations, and such release or dispersal is unexpected and unintended from the standpoint of the Insured. Pollution Conditions shall include Microbial Matter and Legionella pneumophila in any structure on land and the atmosphere contained within that structure.

22. The Policies also contain a provision for the "Reporting Of a Possible Claim",

which states that:

> If the Insured's Director Risk Management first becomes aware during the Policy Period or Extended Reporting Period of this Policy of:
> > . . .
> > 2. a Pollution Condition arising out of Covered Operations with respect to Coverage A.2
>
> which is reasonably expected to result in a Claim, then the Insured may provide written notice to the Company containing the information itemized below. If such written notice is received by the Company prior to the effective date of cancellation or nonrenewal of this Policy or the end of the Extended Reporting Period (whichever is applicable), then any Claim subsequently first made against the Insured arising out of such conduct, shall be deemed for the purpose of this Policy to have been made on the date on which, such written notice is received by the Company. The Insured shall cooperate fully with the Company, and any investigation conducted by the Company or its authorized representatives shall be subject to the terms set forth in Section IV. A. above as applicable to a Claim.

## **THE SUBPOENA**

23. In the multi-district litigation titled *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873, United States District Court for the District of South Carolina, Charleston Division (the "MDL"), plaintiffs have sued manufacturers of aqueous film-forming foam ("AFFF"), a fire suppressant used to extinguish flammable liquid fires, alleging that

6

AFFF was released into the environment when the systems were installed, tested, maintained, and/or used to extinguish a fire, causing bodily injury and/or property damage.

24. Neither EMCOR or Shambaugh are, or ever have been, a defendant in the MDL.

25. On or about April 11, 2020, a plaintiffs' counsel in the MDL served a subpoena on Shambaugh (the "Subpoena"). The Subpoena requested that Shambaugh produce various categories of documents relating to the purchase, order, sale, acquisition, or distribution of AFFF. A true and correct copy of the Subpoena is attached hereto as **Exhibit C**.

26. On or about June 1, 2020, EMCOR sent a letter to Steadfast titled "Notice of Potential Claim or Circumstance Giving Rise to Potential Claim". In that letter, EMCOR notified Steadfast of the Subpoena, stated that neither EMCOR nor Shambaugh had been served with a lawsuit, and requested that "Steadfast accept this communication as a formal tender of an anticipated claim". EMCOR further advised that EMCOR and Shambaugh had retained Nixon Peabody to respond to the Subpoena and Gallivan White Boyd to serve as local counsel. A true and correct copy of the June 1, 2020 letter is attached hereto as **Exhibit D**.

27. On or about September 3, 2020, Nixon Peabody, on behalf of Shambaugh, sent a letter to Steadfast and other insurers of Shambaugh and/or EMCOR providing an update regarding its efforts in responding to the Subpoena. A true and correct copy of the September 3, 2020 letter is attached hereto as **Exhibit E**.

28. In that letter, counsel stated they believed that the MDL "Plaintiffs intend to file an Amended Complaint after obtaining documents in response to the subpoenas and add 'distributors' of AFFF as defendants in the MDL." According to counsel, however, "Shambaugh was never a 'Distributor' [of AFFF] as that term is defined in product liability litigation[.]" Indeed, upon

information and belief, Shambaugh's use of AFFF is limited to the design, installation, and maintenance of fire suppression systems that use AFFF.

29. Nonetheless, counsel stated in the September 3, 2020 letter that it believed that Shambaugh would be added as a defendant in the MDL because Shambaugh was listed on a chart (the "Chart") purportedly listing entities which the MDL Plaintiffs' intended to add as defendants in the MDL. Counsel stated that it had received the Chart from counsel for the MDL Defendants, who had in turn received it from counsel for the MDL Plaintiffs.

30. The Chart lists the name, state of incorporation, principle place of business, and "Likely Role in the Litigation" of 123 entities. With respect to Shambaugh, under "Likely Role in the Litigation", the chart states "[u]pon information and belief, Shambaugh & Son LP was a distributor of 3M AFFF products from approximately 1955 to 2000."

31. On April 9, 2021, Shambaugh's coverage counsel sent a letter to Steadfast asserting, for the first time, that the Subpoena constituted a Claim under the 2019-2020 Policy. In that letter, Shambaugh argued, in effect, that the because the Chart identified Shambaugh as an entity that may be named as MDL Defendant in the future, the Chart and Subpoena together constituted a Claim under the 2019-2020 Policy. A true and correct copy of the April 9, 2021 letter is attached hereto as **Exhibit F**.

32. On June 8, 2021, Steadfast sent a letter to Shambaugh's coverage counsel explaining that Steadfast had no coverage obligation with respect to any costs incurred in responding to the Subpoena because, among other reasons, neither the Subpoena nor the Chart, nor the combination thereof, constituted a Claim under the Policies, as neither allege that Shambaugh or EMCOR are liable or responsible for Loss. A true and correct copy of the June 8, 2021 letter is attached hereto as **Exhibit G**.

33. Shambaugh and/or EMCOR continue to dispute Steadfast's coverage determination that the Subpoena and/or Chart do not constitute a Claim under the Policies.

## COUNT I: DECLARATORY JUDGMENT

34. Steadfast incorporates paragraphs 1 – 33 as if fully set forth herein.

35. The Policies' insuring agreement provides that the Steadfast "will pay on behalf of the Insured all sums in excess of the Self-Insured Retention that the Insured shall become legally obligated to pay as Loss because of Claims first made against the Insured and reported to the Company during the Policy Period."

36. The Policies further provide that with respect to the relevant coverage part—Contractor's Pollution Liability—the insuring agreement applies only to, in relevant part, "Loss as a result of Claims for Bodily Injury, Property Damage or Clean-up Costs caused by Pollution Conditions resulting from Covered Operations by the Insured".

37. The Policies define Claim as "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for Loss."

38. Loss is in turn defined as, in relevant part, "monetary awards or settlements of compensatory Damages and where insurable by law, punitive, exemplary or multiplied damages because of . . . Bodily Injury, Property Damages or Clean-up Costs".

39. The Policies define Damages as, in relevant part, "any amount which an Insured is legally obligated to pay for any Claim to which this insurance applies and shall include judgments, settlements, and interest on judgments[.]"

40. Accordingly, for the Subpoena or the Claim, or the combination thereof, to constitute a Claim potentially subject to coverage under the Policies' Contractor's Pollution Liability coverage part, they must constitute a written demand received by an Insured alleging that

the Insured is liable or responsible for Loss, meaning monetary damages because of Bodily Injury, Property Damages, or Clean-up Costs.

41. The Subpoena seeks only non-monetary relief—the production of documents. Non-monetary relief does not constitute Loss as defined by the Policies. Accordingly, as the Subpoena does not allege that Shambaugh and/or EMCOR are liable or responsible for Loss, it does not qualify as a Claim under the Policies.

42. In addition, neither the Subpoena nor the Chart allege that Shambaugh and/or EMCOR are liable or responsible as a result of Bodily Injury, Property Damages, or Clean-up Costs. The Subpoena makes no allegations against Shambaugh or EMCOR. The only potential allegation in the Chart is that Shambaugh was a distributor of AFFF products. Thus, as the Subpoena does not allege that Shambaugh and/or EMCOR are liable or responsible as a result of Bodily Injury, Property Damages, or Clean-up costs, the Subpoena does not constitute a Claim under the Policies for this additional reason.

43. Accordingly, Steadfast is entitled to a declaration that it owes no coverage obligation under the Policies to the Defendants in connection with the Subpoena.

WHEREFORE, Steadfast respectfully requests a judgment against Shambaugh and EMCOR declaring that Steadfast does not owe coverage to Shambaugh and/or EMCOR for any costs incurred in responding to the Subpoena, as neither the Subpoena nor the Chart, nor the combination thereof, constitute a Claim under the Policies;

Dated: October 18, 2022

Respectfully Submitted,

_____*/s/ Michael Menapace*_____
Michael Menapace (ct26610)
WIGGIN AND DANA LLP
20th Church Street, 16th Floor
Hartford, Connecticut 06103
Tel.: (860) 297-3733
Fax: 860-397-3799
mmenapace@wiggin.com

Clarence Y. Lee (*pro hac vice* motion to be filed)
Ian A. McLin (*pro hac vice* motion to be filed)
SAUL EWING ARNSTEIN & LEHR LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, DC 20006
Tel.: (202) 295-6614
Fax: (202) 295-6721
clarence.lee@saul.com
ian.mclin@saul.com

*Counsel for Plaintiff*