UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEADFAST INSURANCE COMPANY,<br>        Plaintiff,<br><br>        v.<br><br>SHAMBAUGH & SON, L.P.,<br>        Defendant. | No. 3:22-cv-1306 (SRU) |

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The central dispute in this case is whether an insurance policy covers costs incurred in responding to a subpoena. The plaintiff, Steadfast Insurance Company ("Steadfast"), argues that the insurance policy does not cover those expenses, and the defendant, Shambaugh & Son, L.P. ("Shambaugh"), contends that it does. The parties have filed cross motions for summary judgment. *See* Doc. No. 64; Doc. No. 65. For the following reasons, Steadfast's motion for summary judgment is **granted**. Doc. No. 65. Shambaugh's motion for partial summary judgment is **denied**. Doc. No. 64.

**I.    Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Id*. at 255; *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly

supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must present sufficient probative evidence to establish a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

> The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id*. at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

When ruling on cross-motions for summary judgment, the same standard of review applies. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 220 (S.D.N.Y. 2023). "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration." *Id*. (citing *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**II. Background**

The following facts are undisputed unless otherwise indicated.

The plaintiff in this case, Steadfast, is an insurance company that is incorporated in and has its principal place of business in Illinois. Doc. No. 44 at ¶ 2. The defendant, Shambaugh, is a Texas limited partnership. Doc. No. 70-1 at 1. The parties dispute whether Shambaugh has its principal place of business in Texas or in Indiana. *Id.*; *see also* Doc. No. 44 at ¶ 3. Shambaugh is "a wholly owned indirect subsidiary of EMCOR Group, Inc. ('EMCOR')." Doc. No. 70-1 at 2. Northstar Fire Protection of Texas ("Northstar") is a Texas-based company and "is one of several divisions of Shambaugh." *Id.* at 1-2.

This case concerns the issue whether the attorneys' fees and costs of responding to a subpoena (the "Subpoena") are covered by an insurance policy. *See* Doc. No. 70-1 at 11. The Subpoena is connected to "an ongoing multi-district litigation titled *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873, United States District Court for the District of South Carolina, Charleston Division (the 'MDL')." Doc. No. 74 at 10. The plaintiffs in the MDL "have sued manufacturers of aqueous film forming foam ('AFFF'), a fire suppressant used to extinguish flammable liquid fires, alleging that AFFF was released into the environment when the systems were installed, tested, maintained, and/or used to extinguish a fire, causing bodily injury and/or property damage." Doc. No. 1 at ¶ 23.

A. The Insurance Policies

Steadfast "made, executed, and delivered Contractor's Protective Professional Indemnity and Liability Insurance Policies to Shambaugh's parent company, EMCOR, including policy number EOC 9817132 02, with a policy period of July 31, 2018 to July 31, 2019 ['18-19 Policy'], and policy number EOC 9817132 03, with a policy period of July 31, 2019 to July 31,

2020 ['19-20 Policy']." Doc. No. 74 at 19. *See generally* Shambaugh Ex. B to Scare Aff., Doc. No. 68. The Policies were issued to EMCOR. Doc. No. 74 at 19. The 19-20 Policy "does not contain a choice of law provision." Doc. No. 70-1 at 2-3.; *see also* Shambaugh Scare Aff., Doc. No. 64-4 at ¶ 4.

The dispute between the parties primarily concerns the 19-20 Policy, as opposed to the 18-19 Policy. The 19-20 Policy "identif[ies] EMCOR as the First Named Insured." Doc. No. 74 at 5; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 32 (Endorsement #9 in 19-20 Policy). The 19-20 Policy states, under the heading of Endorsement #2, that "Named Insured is amended to include the following: The Named Insured includes any subsidiary, affiliate, or partnership of which the Named Insured owns more than 50% financial interest including those created, or acquired subsequent to the inception date of the policy." Doc. No. 70-1 at 3; Shambaugh Ex. A to Scare Aff., Doc. No. 64-4 at 29; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 24 (Endorsement #2).

Before the 19-20 Policy was issued, Shambaugh included information in its submission to Steadfast regarding both Shambaugh and Northstar. Doc. No. 70-1 at 3-4; Steadfast Ex. 1 to Pelletier Decl. II, Doc. No. 72 at 249, 265. In addition, Endorsement # 26 to the 19-20 Policy was amended by Steadfast to add Northstar and other entities as Additional Named Insureds. Doc. No. 70-1 at 4; Shambaugh Ex. A to Scare Aff., Doc. No. 64-4 at 60; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 55 (Endorsement #26).

The 19-20 Policy contains Connecticut surplus lines notices. Doc. No. 74 at 5-6; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 3.

The 19-20 Policy states that Steadfast "will pay on behalf of the Insured all sums in excess of the Self-Insured Retention that the Insured shall become legally obligated to pay as

4

Loss because of Claims first made against the Insured and reported to the Company during the Policy Period." Doc. No. 74 at 6; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 8 § I.A.

Both parties believe Coverage A.2 is relevant to this case. Doc. No. 74 at 6. Coverage A.2, Contractor's Pollution Liability, states:

> The Company will pay on behalf of the Insured all sums that the Insured shall become legally obligated to pay as Loss as a result of Claims for Bodily Injury, Property Damage or Clean-up Costs caused by Pollution Conditions resulting from Covered Operations by the Insured; or by any entity for which the Insured is legally liable as a result of the performance of others. The Pollution Conditions must be unexpected and unintended from the standpoint of the Insured. Claims for Bodily Injury, Property Damage or Clean-up Costs must be first made against the Insured and reported to the Company during the Policy Period.

Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 25 § 2 (Endorsement #3).

The 19-20 Policy defines a "Claim" as "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for loss. Claim also means a Protective Indemnity Claim." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36).

The 19-20 Policy defines a "loss" under Section V and under Endorsement #36 as:

> 1. monetary awards or settlements of compensatory Damages and where insurable by law, punitive, exemplary or multiplied Damages because of:
>
> (a) Claims arising out of Breach of Professional Duty in the performance of Professional Services under Coverage A.1[;] or
>
> (b) Bodily Injury, Property Damages or Clean-up Costs under Coverage A.2; and
>
> 2. Claim Expenses; and
>
> 3. Emergency Response Costs; and
>
> 4. Protective Loss.

5

Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 20 § V.M; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V (Endorsement #36, adding "Protective Loss").

The Policy defines "Claim Expenses" as including "[f]ees charged by any lawyer designated by the Company" and "all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if authorized by the Company." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 18 § V.D.

The Policies define "Damages" as

> any amount which an Insured is legally obligated to pay for any Claim to which this insurance applies and shall include judgments, settlements, and interest on judgments, provided always that Damages shall not include the return or withdrawal of professional fees, sanctions, uninsurable fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

Steadfast Ex. B, Pelletier Decl., Doc. No. 65-6 at 45 (Endorsement #21).

The Policies each have "self-insured retentions of $500,000." Doc. No. 70-1 at 15; Shambaugh Scare Aff., Doc. No. 64-4 at ¶ 19; Shambaugh Ex. A to Scare Aff., Doc. No. 64-4 at 9-10 (item 4). The self-insured retention operates like a deductible. *See* Shambaugh Scare Aff., Doc. No. 64-4 at ¶ 19.

Finally, Section C of the Policy, titled "Defense Provisions," states:

> C. DEFENSE PROVISIONS:
>
> With respect to any Claim made against the Insured for which coverage is provided under this Policy and payable hereunder in excess of the Self-Insured Retention, or for which coverage is provided under this Policy and payable by the Insured under its Self -Insured retention:
>
> (1) The Company shall not be called upon to assume charge of the investigation, defense or settlement of any Claim made against the Insured, but the Company, at its option shall have the right and shall be given the opportunity to associate, at its own expense, with the Insured in the investigation, defense or control of such Claim which would involve or appear reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in the defense or settlement of

> such Claim. The Insured and the Company shall mutually agree to select independent counsel for the defense of any claim. The consent of the Insured for such counsel shall not be unreasonably withheld.
>
> (2) In the absence of such election by the Company, the Insured shall arrange for and assume the investigation, defense and settlement of such Claim provided that the Insured shall take no action or agree to any settlement which alone or taken together with Claim Expenses will exceed the Self-Insured Retention without the prior written consent of the Company.

Shambaugh Ex. A to Scare Aff., Doc. No. 64-4 at 14; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 9 § I.C.

B. The Subpoena

Although Shambaugh is not a defendant in the MDL, on April 11, 2020, Shambaugh was served a subpoena (the "Subpoena") by the plaintiffs in the MDL. Doc. No. 1 at ¶¶ 24-25; Steadfast Ex. 2 to McLin Decl., Doc. No. 65-9; Shambaugh Ex. C to Scare Aff., Doc. No. 64-4 at 87. The Subpoena called for "the production of numerous categories of documents concerning Shambaugh as a distributor and relating to the purchase, order, sale, acquisition, or distribution of AFFF." Shambaugh Scare Aff., Doc. No. 64-4 at ¶ 16; *see* Shambaugh Ex. C to Scare Aff., Doc. No. 64-4 at 93, 96-98. The Subpoena defined "DISTRIBUTOR" as "refer[ring] to Shambaugh & Son, L.P. and any of its agents, associates, partners, employees, affiliates, and any person acting or purporting to act on its behalf, now or in the past." Shambaugh Ex. C to Scare Aff., Doc. No. 64-4 at 93.

On May 28, 2020, the MDL Court entered an order titled Case Management Order No. 3.D ("CMO 3.D"). Steadfast Ex. 3 to McLin Decl., Doc. No. 65-10 at 3-5. CMO 3.D stated that the MDL plaintiffs' executive committee ("PEC") "ha[d] identified additional entities that may be liable for Plaintiffs' alleged claims, or a portion thereof, in one or more cases." Steadfast Ex. 3 to McLin Decl., Doc. No. 65-10 at ¶ 3. It further stated that "[a]ccording to the PEC, these

7

additional entities include alleged manufacturers of AFFF, manufacturers of fluorochemicals utilized in AFFF, manufacturers of PFOA and PFOS precursors contained in AFFF, and distributors of AFFF products that placed AFFF products into the stream of commerce." *Id.* at ¶ 4. The MDL Court further stated that it was "advised that the PEC has shared with Defendants certain information captured in charts concerning entities already named as defendants in the MDL or potentially affiliated with such entities who may, in the PEC's view, be appropriate parties to be added as Defendants to particular actions as would be permitted by this Order." *Id.* at ¶ 8.

On May 28, 2020, counsel for Shambaugh Jeffrey Brenner emailed counsel for the MDL defendants regarding CMO 3.D. Doc. No. 74 at 11; Steadfast Ex. 3 to McLin Decl., Doc. No. 65-10 at 2. Counsel for the MDL defendants replied to Brenner with "a chart listing 123 entities (the 'Chart')." Doc. No. 74 at 13-14; Steadfast Ex. 6 to McLin Decl., Doc. No. 65-13. MDL defendants' counsel stated that the chart was given to the MDL defendants as a chart of "potential distributor defendants." Steadfast Ex. 6 to McLin Decl., Doc. No. 65-13 at 2. Shambaugh was one of the 123 entities listed. *Id.* at 12. The column of the chart with the heading "Likely Role in the Litigation," the entry for Shambaugh states, "Upon information and belief, Shambaugh & Son LP was a distributor of 3M AFFF products from approximately 1955 to 2000." *Id.* at 3, 12.

On June 1, 2020, Shambaugh sent Steadfast a letter headed "NOTICE OF POTENTIAL CLAIM OR CIRCUMSTANCE GIVING RISE TO POTENTIAL CLAIM." Shambaugh Ex. D to Scare Aff., Doc. No. 64-4 at 100. The letter attached the Subpoena and requested that Steadfast "accept this communication as a formal tender of an anticipated claim, and recognize

8

the erosion of the self-insured retention/deductible of $500,000 from date of tender of this potential claim." *Id*.

Shambaugh began responding to the Subpoena by "searching and reviewing records from Shambaugh, as well as at least two of its subsidiaries, Dalmation and Northstar." Doc. No. 70-1 at 13; *see also* Shambaugh Ex. 12 to McLin Decl., Doc. No. 67-6 at 9 (stating that Shambaugh will be reviewing documents from Dalmatian and Northstar after completing production of documents from Shambaugh). Steadfast's counsel "negotiated a reduction in the scope of the Subpoena," and business records from Shambaugh, Northstar, and Dalmation were reviewed. Doc. No. 70-1 at 14. "[I]n connection with Shambaugh's response to the Subpoena, Shambaugh incurred attorneys' fees and costs in excess of $1.7 million." *Id*.

On January 26, 2021, counsel for Shambaugh sent Steadfast a letter stating that Shambaugh "would seek coverage under the Policies 'once a lawsuit naming Shambaugh or its related companies is filed and served.'" Doc. No. 74 at 17 (citing Steadfast Ex. 16 to McLin Decl., Doc. No. 67-10 at 2). On June 8, 2021, Steadfast denied Shambaugh coverage for the costs of responding to the Subpoena, contending that the Subpoena was not a "Claim" under the Policies. Doc. No. 74 at 17-18; Steadfast Ex. 18 to McLin Decl., Doc. No. 67-12 at 2.

**III.    Discussion**

Steadfast and Shambaugh each move for summary judgment. *See* Doc. No. 64; Doc. No. 65. Shambaugh's motion for partial summary judgment argues principally that: (1) Texas or Illinois law applies to this action, including to the interpretation of the 19-20 Policy; and (2) Shambaugh has a "Claim" under the 19-20 Policy. *See generally* Doc. No. 64-1. Steadfast's motion for summary judgment argues: (1) Connecticut law applies to this action, including to the interpretation of the 19-20 Policy; (2) neither the Subpoena nor the Chart is a "Claim" under the

Policies; (3) the costs Shambaugh incurred are not Covered Claim Expenses; and (4) coverage is not available under the 18-19 Policy. *See generally* Doc. No. 65-1.

A. <u>Coverage Availability Under the 19-20 Policy</u>

The parties principally disagree about the availability of coverage under the 19-20 Policy. The parties also dispute the law under which the 19-20 Policy should be interpreted.

Under the laws of all three states proposed by the parties, insurance policies are generally to be interpreted according to their plain and meaning, unless, for example, their terms are ambiguous. *See Loncar v. Progressive Cnty. Mut. Ins. Co.*, 553 S.W.3d 586, 589 (Tex. App. 2018) (citing *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (per curiam)) ("Unless the policy provides otherwise, we give words and phrases their ordinary and generally accepted meanings, reading them in context and in light of grammar and common usage rules. If only one interpretation is reasonable, the policy is unambiguous, and we adopt that interpretation."); *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37-38 (2014) (quoting *Johnson v. Conn. Ins. Guaranty Assn.*, 302 Conn. 639, 643 (2011)) ("If the terms of [an insurance] policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."); *Virginia Sur. Co. v. Adjustable Forms Inc.*, 382 Ill. App. 3d 663, 669 (2008) (citing *Rich v. Principal Life Ins. Co.*, 226 Ill.2d 359, 371 (2007)) ("When reviewing an insurance policy to determine the coverage provided under the policy, we must interpret the policy and the words used according their plain, ordinary, and popular meaning."). Indiana, another state that may be relevant to this action, also adopts the same approach. *See Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005) ("If [an insurance policy's] terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning."). Accordingly, I will determine the plain and ordinary

meaning of the terms in the 19-20 Policy, and I will interpret the 19-20 Policy on that basis unless I discern any ambiguity.

The parties dispute whether either the Subpoena or the Chart constitutes a "Claim" as defined by the 19-20 Policy. Doc. No. 73 at 27, 29. Shambaugh argues that the Subpoena alone, or in combination with the Chart, fits that definition. *Id.* at 29.

The 19-20 Policy defines "Claim" as "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for loss. Claim also means a Protective Indemnity Claim[1]." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36).[2] "Loss" is defined as

> 1. monetary awards or settlements of compensatory Damages and where insurable by law, punitive, exemplary or multiplied Damages because of:
>
> (a) Claims arising out of Breach of Professional Duty in the performance of Professional Services under Coverage A.1; or
>
> (b) Bodily Injury, Property Damages or Clean-up Costs under Coverage A.2; and
>
> 2. Claim Expenses; and
>
> 3. Emergency Response Costs; and
>
> 4. Protective Loss.

Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 19-20 § V.M; Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36, adding "Protective Loss"). Of those categories of "loss" listed above, the one most relevant to Shambaugh's Subpoena expenses is "Claim Expenses." The Policy defines "Claim Expenses" as including "[f]ees charged by any

---

[1] "Protective Indemnity Claim" does not appear relevant here. It is separately defined as "a written demand by you against a Design Professional(s) under contract with you seeking remedy from or alleging liability or responsibility on the part of such Design Professional(s) for Protective Loss arising out of the Design Professional's rendering of or failure to render Professional Services." *Id*. at 75 § V.B (Endorsement #36).
[2] In the 19-20 Policy's definition of "Claim," the words Claim, Insured, Named Insured, loss, and Protective Indemnity Claim are in bold, indicating that they are defined terms.

11

lawyer designated by the Company" and "all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if authorized by the Company." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 18 § V.D.

Thus, under the 19-20 Policy's definition of "claim," the "demand" itself both must "seek[] a remedy" and must "alleg[e] liability or responsibility on the part of [Shambaugh] for loss." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36). "Loss" is a term defined narrowly by the 19-20 Policy. *Id.*

The word "alleging" is not defined in the 19-20 Policy. *Black's Law Dictionary* defines "allegation" as "'[t]he act of declaring something to be true' or '[s]omething declared or asserted as a matter of fact.'" *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2021 WL 4170757, at *12 (D. Conn. Sept. 14, 2021) (quoting *Allegation*, Black's Law Dictionary (8th ed. 2004)). That definition connotes express communication and not mere implication. In other words, under the 19-20 Policy, to constitute a claim, the "demand" must "declare[] or assert[] as a matter of fact" Shambaugh's "liability or responsibility . . . for" what the 19-20 Policy considers a "loss." *Id.*; *see also* Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V (Endorsement #36).

Shambaugh maintains that the Subpoena and Chart allege liability and responsibility on Shambaugh's part. Shambaugh points to the fact that the Subpoena states that Shambaugh is a "distributor" of AFFF products. Doc. No. 73 at 34. Shambaugh also avers that the Chart alleges that Shambaugh was "a distributor" of AFFF "from approximately 1955 to 2000," which is the "core of the Plaintiff's claim in the MDL." *Id*. at 34-35. Even to the extent that the Subpoena and Chart state or suggest that Shambaugh distributed AFFF, those statements or suggestions do not

12

amount to an allegation of liability or responsibility for a loss as defined by the plain language of the 19-20 Policy.

The identification of Shambaugh as a "DISTRIBUTOR" in the Subpoena is not an *allegation* of liability or responsibility under the ordinary meaning of the term "allegation." The Subpoena defines the term "DISTRIBUTOR" as "refer[ring] to Shambaugh & Son, L.P. and any of its agents, associates, partners, employees, affiliates, and any person acting or purporting to act on its behalf, now or in the past." Shambaugh Ex. C to Scare Aff., Doc. No. 64-4 at 93. The ordinary meaning of "distributor" is "one that distributes," and the ordinary meaning of "distribute" includes "to spread out so as to cover something" or "to give out or deliver especially to members of a group." *Distributor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/distributor (last accessed Sept. 6, 2024); *Distributes*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/distributes (last accessed Sept. 6, 2024). The Subpoena requests "all DOCUMENTS and COMMUNICATIONS . . . between DISTRIBUTOR" and various entities regarding AFFF. Shambaugh Ex. C to Scare Aff., Doc. No. 64-4 at 96-98. Thus, the Subpoena in its plain terms simply states that Shambaugh was an entity that either spread out or gave out AFFF.

The information the Subpoena requests from Shambaugh may bring about a future allegation of liability or responsibility, but the Subpoena does not itself make that allegation. Shambaugh is not yet a party to the MDL, and perhaps it never will be. The Subpoena is ultimately merely a third-party subpoena in a civil dispute. At the hearing, however, Shambaugh argued that the Subpoena implies strict product liability by using the term "distributor." Setting aside whether that inference is reasonable, as previously noted, to allege is to do more than to

imply. Shambaugh is therefore only correct to the extent it argues that Shambaugh's status as a "distributor" of AFFF *may* subject it to future allegations of liability or responsibility.

Turning next to the Chart, the Chart is also merely a list of *potential* defendants. It does not assert that Shambaugh will be a defendant in the MDL, nor does it declare as a matter of fact that Shambaugh is "liab[le] or responsib[le] for . . . loss." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36). In fact, the Chart contains no title or description at all, save for the Chart's column headings. *See generally* Steadfast Ex. 6 to McLin Decl., Doc. No. 65-13. Shambaugh, along with numerous other entities, is described, "upon information and belief," as an AFFF products "distributor" under the table column heading "Likely Role in the Litigation." *Id.* at 3, 12. Accordingly, at most, the Chart implies the mere possibility of a future liability or responsibility for a loss, which does not suffice under the ordinary meaning of "allegation."

Shambaugh also contends that the Subpoena alleges Shambaugh's responsibility for a loss in that it alleges Shambaugh is "responsible for producing responsive documents, which in turn necessitated the incurring of attorneys' fees and costs." Doc. No. 73 at 34. It may be true that the Subpoena suggests that Shambaugh will incur *expenses*, that is, attorneys' fees, but that is not the same as alleging responsibility for a "*loss*" under the meaning of the 19-20 Policy. Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36) (emphasis added). "Loss" under the 19-20 Policy is a defined term that does not encompass Shambaugh's legal fees incurred in responding to the Subpoena. The only type of covered "loss" under the 19-20 Policy that might incorporate those legal expenses is a "claim expense." Under the 19-20 Policy, however, "Claim Expenses" of attorneys' fees can only count as a "loss" when the "lawyer [is] designated by the Company [that is, Steadfast]" or the expenses are "authorized by

the Company [that is, Steadfast]." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 18 § V.D (defining "Claim Expenses"). No such designation was made by Steadfast.

Seeking to distinguish the 19-20 Policy's narrow definition of "Claim Expenses," Shambaugh points to Section I.C. of the 19-20 Policy, concerning "Defense Provisions." That section states that "[i]n the absence" of Steadfast "associat[ing], at its own expense, with the Insured in [an] investigation, defense or control of [a] Claim," Shambaugh "shall arrange for and assume the investigation, defense and settlement of such Claim." *Id.* at 9 § I.C.(1)-(2). That language, however, is preceded by the following general statement: "With respect to any *Claim* made against the Insured *for which coverage is provided under this Policy* . . . ." *Id*. at 9 § I.C. (emphasis added). Thus, under that provision's plain terms, the elements of a "claim" under the 19-20 Policy must independently be met in order to trigger the "Defense Provisions" language on which Shambaugh relies. According to the provision regarding "Defense Provisions," once the elements of a Claim are met, Steadfast has the option to associate with Shambaugh in investigating, defending, or controlling the Claim. If Steadfast does not exercise that option, Shambaugh shall handle the Claim, but Shambaugh cannot accept a settlement exceeding the Self-Insured Retention without Steadfast's consent. I therefore conclude that the 19-20 Policy's language on "Defense Provisions" is unambiguous and does not negate or modify the 19-20 Policy's requirement that "Claim Expenses" be either the fees of a "lawyer designated by" Steadfast, or other expenses that are "authorized by" Steadfast. *Id*. at 18 § V.D. The expenses Shambaugh incurred in responding to the Subpoena thus do not fit the 19-20 Policy's definition of "Claim Expenses." Accordingly, the Subpoena does not allege Shambaugh's responsibility for a "loss" as defined in the 19-20 Policy.

Shambaugh relies on several cases to support its argument that the Subpoena is a claim. *See* Doc. No. 64-1 at 3; Doc. No. 73 at 29-34, 33 n.5. Two of those cases concerned insurance policies that left the term "claim" undefined, which permitted the court to adopt a broader definition of the term. For example, in *Richardson*, the court looked to the ordinary meaning of "claim" under Illinois law, which was "a demand for something due or believed to be due." *Richardson Elecs., Ltd. v. Fed. Ins. Co.*, 120 F. Supp. 2d 698, 700-01 (N.D. Ill. 2000). Under that broad understanding of "claim," the court concluded that a subpoena was a claim notwithstanding the absence of a demand for money. *Id*. at 701-02. The policy in *Polychron* also did not define the word "claim," so the court looked to its ordinary meaning under Arkansas law. *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990). The Eighth Circuit concluded that the ordinary meaning of "claim" has a "broad[] definition," which "encompasse[d]" a grand-jury subpoena. *Id*.

The remaining cases cited by Shambaugh evaluated policies that defined "claim" to include a simple "demand" for "non-monetary relief." *See Conduent State Healthcare, LLC v. AIG Specialty Ins. Co*., 2019 WL 2612829, at *2 (Del. Super. Ct. June 24, 2019) (policy defined "claim" as "a written demand for money, services, non-monetary relief or injunctive relief"); *Oceans Healthcare, L.L.C. v. Illinois Union Ins*. *Co.*, 379 F. Supp. 3d 554, 561 (E.D. Tex. 2019) (policy defined "claim" as "a written demand against any insured for monetary damages or non-monetary or injunctive relief"); *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co*., 2018 WL 2431969, at *3 (N.D. Ill. May 30, 2018) (policy that defined a claim, in part, as a "written demand for monetary, non-monetary or injunctive relief made against an Insured"); *Patriarch Partners, LLC v. AXIS Ins. Co*., 2017 WL 4233078, at *1 (S.D.N.Y. Sept. 22, 2017), *aff'd*, 758 F. App'x 14 (2d Cir. 2018) (policy defined "claim" to include "a written demand for monetary

16

damages or non-monetary relief (including but not limited to injunctive relief)"); *Tucker v. Am. Int'l Grp., Inc.*, 2015 WL 403195, at *11 (D. Conn. Jan. 28, 2015) (the term "claim" in the policy was defined in part as "a written demand for monetary or non-monetary relief"); *Weaver v. Axis Surplus Ins. Co.*, 2014 WL 5500667, at *2 (E.D.N.Y. Oct. 30, 2014) (policy defined "claim" to include "a written demand against an Insured for monetary or non-monetary relief"); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 3357812, at *2 (N.Y. Sup. Ct. 2013) (policy defined "claim" to include "[a] written demand for monetary, non-monetary or injunctive relief"); *Agilis Benefit Servs., LLC v. Travelers Cas. & Sur. Co. of Am.*, 2010 WL 11595321, at *7 (E.D. Tex. Feb. 24, 2010) (policy defined "claim" in part as "a written demand for monetary or non-monetary relief"); *Anderson-Tully Co. v. Fed. Ins. Co.*, 2007 WL 9643297, *4 (W.D. Tenn. Aug. 7, 2007) (policy defined "claim" as including "a written demand for monetary damages or non-monetary relief"); *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, 2004 WL 603482, at *3 (N.D. Ill. Mar. 22, 2004) (policy defined "claim" to include "a written demand for monetary or nonmonetary relief made against any Insured").

Thus, all of the cases cited by Shambaugh concerned policies under which the term "claim" was defined far more broadly than the term is defined in the 19-20 Policy. Under the 19-20 Policy, a claim is not only a "demand . . . seeking a remedy" but also a "demand" that must "alleg[e] liability or responsibility on the part of the Named Insured for loss." Steadfast Ex. B to Pelletier Decl., Doc. No. 65-6 at 74 § V.A (Endorsement #36). Only when those elements of a "claim" are met can Shambaugh obtain coverage under the 19-20 Policy.

Three of the cases cited by Shambaugh, *Syracuse University*, *Agilis Benefit Services*, and *Astellas*, discussed insurance policies that limited coverage only to "claims" concerning "wrongful acts." *See Syracuse Univ.*, 2013 WL 3357812, at *2; *Agilis Benefit Servs.*, 2010 WL

17

11595321, at *1; *Astellas*, 2018 WL 2431969, at *1. Even though such policy language at first glance appears analogous to the "allegation of liability or responsibility" language in the 19-20 Policy, those three cases differ from the instant case in key ways. *Syracuse University* and *Agilis Benefit Services*, for instance, concerned liability insurance policies that encompassed a duty to defend. *See Syracuse Univ.*, 2013 WL 3357812, at *3, *5; *Agilis Benefit Servs.*, 2010 WL 11595321, at *1-2. In the duty to defend context, an insurance company's duty to defend is triggered by the mere *potential* of liability covered by the policy. *See Pekin Ins. Co. v. McKeown Classic Homes, Inc.*, 161 N.E.3d 1059, 1065 (Ill. App. 2010); *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018); *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 805-06 (2013). The insured parties in those cases therefore only needed to show that future liability was sufficiently possible to obtain the defense coverage that they sought—a circumstance that is distinguished from the instant case.

Moreover, *Syracuse University* and *Agilis Benefit Services* both concerned grand jury subpoenas issued by the government in criminal cases. The courts in both recognized that the factual circumstances surrounding the subpoenas in those cases elevated those subpoenas beyond mere "requests for information." *See Syracuse Univ.*, 2013 WL 3357812, at *3 (Sup. Ct. 2013) ("[A] grand jury's investigations are criminal proceedings for monetary or non-monetary relief and . . . common sense dictates that a criminal investigation is an integral part of a criminal proceeding. . . . In addition, when a District Attorney issues and serves a subpoena in good faith, a proceeding is instituted in the grand jury, just as in an analogous situation a civil action is commenced by the service of a summons."); *Agilis Benefit Servs.*, 2010 WL 11595321, at *13 ("The Court concludes that the service of the grand jury subpoena, the simultaneous execution of

18

a search warrant on Agilis referencing criminal statutes, the subsequent execution of a search warrant for safe deposit boxes under the control of the Individual Plaintiffs, and the range and subject matter of the documents sought by the IRS establish the IRS is investigating Plaintiffs for alleged wrongful conduct."). By contrast, the factual context of a third-party subpoena in a civil matter—even a matter as extensive as the MDL—lacks those factual markers that would be necessary to elevate the Subpoena to an "allegation" of responsibility or liability.

As for *Astellas*, also cited by Shambaugh, the court in that case only came to the conclusion that the "wrongful act" element was satisfied because the policy at issue was written to "only require[] that a 'Claim' was made 'for any Wrongful Act.'" *Astellas*, 2018 WL 2431969, at *5 (N.D. Ill. May 30, 2018). Because, as that policy was written, "[i]t [was] not necessary for the *subpoena* to include language that asserts that plaintiffs engaged in an actual or alleged wrongful act," the court concluded that other statements by the DOJ to the insured parties would suffice as allegations of wrongful acts. *Id.* (emphasis added). In the 19-20 Policy, by contrast, it is the "demand" itself that must "allege" liability or responsibility. Shambaugh's argument that the Subpoena and the Chart are allegations of liability or responsibility for loss is therefore unavailing.

Furthermore, at the hearing on the cross motions for summary judgment, counsel for Shambaugh argued that "a loss need not be made" or "a claim need not be ensued against the insured under a claims-made policy." Counsel for Shambaugh is correct to the extent that under a claims-made insurance policy, timing with respect to coverage under the policy is determined based on when the claim was made and not when the loss was incurred. *See* 7 Jordan R. Plitt et al., Couch on Ins. § 102:22 (3d ed. 2024). But even though this is a claims-made policy, no claim has been made here. To obtain coverage under the 19-20 Policy, Shambaugh needs to first meet

the 19-20 Policy's definition of a "claim" in order to then initiate the claim within the policy's timeframe. Within the timeframe of the 19-20 Policy, Shambaugh did not bring a "claim" as defined under the terms of the 19-20 Policy. That does not mean that Shambaugh could never obtain coverage from Steadfast under a similar policy for those same costs in the future, if and when Shambaugh initiates a "claim" that complies with the policy's terms.

Thus, for the reasons set forth above, I conclude that coverage is not available under the terms of the 19-20 Policy. Steadfast's motion for summary judgment on that issue is therefore granted. Shambaugh's motion for summary judgment, which sought a conflicting interpretation of the 19-20 Policy, is denied.

B. Coverage Availability Under the 18-19 Policy

Steadfast further seeks summary judgment that coverage is unavailable under the 18-19 Policy. Doc. No. 65-1 at 29-30. In both its briefs and at the hearing, Shambaugh abandoned its request for coverage under the 18-19 Policy. *See* Doc. No. 64-1 at 1, 22. I thus conclude that coverage is unavailable under the 18-19 Policy.

IV. **Conclusion**

For the foregoing reasons, Steadfast's motion for summary judgment is **granted**. Doc. No. 65. Shambaugh's motion for partial summary judgment is **denied**. Doc. No. 64.

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 13th day of September 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge